637 F.2d 743
 106 L.R.R.M. (BNA) 2006, 90 Lab.Cas. P 12,409
 Karen G. SILKWOOD, by the Administrator of her estate, Bill
M. Silkwood; and Beverly K. Meadows; Michael E. Meadows; and
Dawn E. Meadows, the infant heirs of Karen G. Silkwood by
their Guardian William E. Meadows, Plaintiffs-Appellants,
v.
The KERR-McGEE CORPORATION; Dean A. McGee; James Reading;
Fred Welch; W. C. Gentry; Lawrence Olson; Theodore Rosack;
Jacque Srouji; One Named But Unidentified Agent of the
Federal Bureau of Investigation; James J. Kelly; Peter
Colefax; Earl M. Jorgensen; Edwin L. Kennedy; Breene M.
Kerr; Robert S. Kerr, Jr.; F. C. Love; George B. Parks; J.
B. Saunders; A. P. F. Seale; James E. Webb; R. T. Zitting;
Parker S. Dunn; Wayne Norwood; Ronald Adkisson; Roy E. King;
G. T. Sinke; J. Marler and G. France, Defendants-Appellees.
 Nos. 78-1826, 79-1014.
 United States Court of Appeals,
Tenth Circuit.
 Argued March 11, 1980.
Decided Dec. 3, 1980.
 
 Daniel R. Sheehan, Oklahoma City, Okl. (Robert Hager, Oklahoma City, Okl., and Eugene R. Scheiman, of Kurland & Scheiman, New York City, of counsel, with him on briefs), for plaintiffs-appellants.
 William G. Paul, of Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., and C. Lee Cook, Jr., of Chadwell, Kayser, Ruggles, McGee & Hastings, Chicago, Ill., for defendants-appellees Dean A. McGee, James J. Kelly, Peter Colefax, Earl M. Jorgensen, Edwin L. Kennedy, Breene M. Kerr, Robert S. Kerr, Jr., F. C. Love, George B. Parks, A. T. F. Seale, James E. Webb, R. T. Zitting, Parker S. Dunn, Ronald Adkisson, Roy E. King, G. J. Sinke, James Marler, G. France, III, James Reading, Fred Welch and W. C. Gentry.
 Glenn V. Whitaker., Atty., Civ. Div., Dept. of Justice, Washington, D. C. (Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., and Larry D. Patton, U. S. Atty., Oklahoma City, Okl., with him, on brief), for defendants-appellees Lawrence Olson and Theodore Rosack.
 Alletta d'A. Belin and Timothy B. Flynn, Center for Law in the Public Interest, Los Angeles, Cal., filed an amicus curiae brief for the Committee for Public Justice.
 Before McWILLIAMS, DOYLE and LOGAN, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 This is an appeal by the estate and heirs of Karen G. Silkwood from a judgment dismissing for failure to state a cause of action two claims asserted against officials and agents of Kerr-McGee Corporation[1] and agents of the Federal Bureau of Investigation (FBI),[2] based upon the Civil Rights Act of 1871, 42 U.S.C. § 1985(3). They also appeal a summary judgment order against them dismissing their claim against the FBI agents based upon Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). See Silkwood v. Kerr-McGee Corp., 460 F.Supp. 399 (W.D.Okl.1978). The trial court authorized this appeal under Fed.R.Civ.P. 54(b).[3]
 
 
 2
 The issues treated on appeal are (1) whether the National Labor Relations Board has exclusive jurisdiction over the claims asserted, (2) whether cognizable classes and sufficient class-based animus are shown for purposes of § 1985(3) jurisdiction, and (3) whether a Bivens claim may be maintained against FBI agents for actions occurring after Karen Silkwood's death. We find it unnecessary to consider other defenses raised by defendants: that the section 1985(3) claims fail for lack of state action and that the actions do not survive the death of Silkwood under Oklahoma law.
 
 
 3
 The complaint, as its first cause of action, alleges the following. Karen Silkwood was an employee at the Kerr-McGee Corporation's nuclear facility at Cimmarron, Oklahoma. The Kerr-McGee defendants formed a conspiracy in November of 1972 to prevent Silkwood and other Kerr-McGee employees organizing a labor union from enjoying the equal protection of the laws. The Kerr-McGee defendants, in the course of this conspiracy, placed Silkwood and others under illegal surveillance, unlawfully entered their homes, automobiles and other private areas, wiretapped their telephones and homes, physically endangered their lives and safety upon the public highways, engaged in discriminatory firing and transfers, and used other forms of coercion to hinder the organization of the union. Silkwood's constitutional rights violated by this course of conduct stem primarily from the First Amendment and include the rights to freedom of speech, travel, association, assembly, press, the rights to petition the government for redress of grievances, to be secure in person, homes, and effects, and not to be deprived of life or liberty without due process of law. Plaintiffs allege that the FBI defendants joined this conspiracy in November of 1974, after the death of Karen Silkwood, to aid the other defendants in their efforts to cover up the prior conspiratorial activities. All defendants purportedly covered up information and gave false reports to various federal investigative officials for the purpose of depriving Karen Silkwood and others of the equal protection and enjoyment of the laws of the United States.
 
 
 4
 The second claim is essentially identical to the first, except that the class is defined as Karen Silkwood and the other Kerr-McGee employees who filed complaints against the Kerr-McGee Corporation under the Atomic Energy Act.
 
 Jurisdiction
 
 5
 Although the district court did not treat the issue, defendants have asserted that the National Labor Relations Board (NLRB) has exclusive jurisdiction of both claims under the preemption doctrine of San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959), which states: "When an activity is arguably subject to § 7 or § 8 of the (National Labor Relations) Act (29 U.S.C. §§ 157, 158), the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board ...." We believe this important issue of jurisdiction must be resolved before considering any questions going to the merits of the case.
 
 
 6
 The pertinent allegations regarding this issue are that defendants engaged in two conspiracies against the plaintiff-one designed to deprive Karen Silkwood and other employees "who were engaged in organizing a labor union" of the equal protection and enjoyment of the laws of the United States; the other designed to hinder and/or punish Silkwood and others "who had filed complaints against the corporation under the Atomic Energy Act from seeking and enjoying the equal protection of the laws" to associate with one another and to speak to the news media. An alleged objective and activity of both conspiracies was "harassment of the freedom of movement and travel, so as physically to endanger their (Silkwood's and others') safety and lives upon the public highways."
 
 
 7
 The Supreme Court has indicated that "the decision to preempt federal and state court jurisdiction over a given class of cases must depend on the nature of the particular interests being asserted and the effect upon the administration of national labor policies of concurrent judicial and administrative remedies." Vaca v. Sipes, 386 U.S. 171, 180, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967). Three critical factors generally control the disposition of the preemption question. First, whether there exists a potential for a direct conflict of substantive law between the National Labor Relations Act (NLRA) and the state or federal cause of action; second, whether there is a state interest "deeply rooted in local feeling and responsibility"; and third, whether adjudication of the cause of action interferes with the effective administration of national labor policy by deciding issues identical to those underlying the labor dispute. Farmer v. United Brotherhood of Carpenters, 430 U.S. 290, 298, 97 S.Ct. 1056, 1062, 51 L.Ed.2d 338 (1977). On the basis of these criteria, state court jurisdiction has been held proper for actions for libel, Linn v. United Plant Guard Workers, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966); malicious interference with a lawful occupation, International Union, United Automobile, Aircraft and Agricultural Workers v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958); and intentional infliction of emotional distress, Farmer v. United Brotherhood of Carpenters, supra.
 
 
 8
 In the instant case, there is little difficulty in meeting the first two criteria. The deprivation of civil rights through a conspiracy and course of conduct involving wiretapping, surveillance, discriminatory firing and transfers, breaking and entering, and life-endangering harassment on public highways could rarely, if ever, come within the protection of the NLRA and thus produce a substantive conflict of law. Likewise, it can hardly be denied that the government has a deeply rooted interest in proscribing such conduct. The third criterion, however, presents a serious obstacle to jurisdiction.
 
 
 9
 In order to support a section 1985(3) claim, the plaintiff must be a member of a statutorily protected class, and the actions taken by defendant must stem from plaintiff's membership in the class. Lessman v. McCormick, 591 F.2d 605, 608 (10th Cir. 1979). Here, the plaintiff has chosen to define the classes as a group of persons seeking to organize a union and a group reporting safety violations at their place of employment to the Atomic Energy Corporation. Consequently, to support a section 1985(3) claim, the trial court would be required to find that the defendants (primarily management personnel of Kerr-McGee) took discriminatory action against employees because of their status as members of the groups described above. Adjudication of these issues would necessarily duplicate the critical issues underlying a claim before the NLRB based on sections 7 and 8 of the NLRA. See Iowa Beef Processors, Inc. v. Gorman, 476 F.Supp. 1382 (N.D.Iowa 1979). Inherent in both cases is a required finding that workers were discriminated against by their employer for being members of an organization engaging in concerted activities for the purpose of collective bargaining or other mutual aid or protection. The administrative interference created by this overlapping jurisdiction has been held in at least one case to require preemption of federal court jurisdiction. Id. See also, Bova v. Pipefitters Local 60, 554 F.2d 226 (5th Cir. 1977). Moreover, a recent Supreme Court decision has held this third criterion is the critical inquiry of the case. Sears, Roebuck & Co. v. San Diego County District Council of Carpenters, 436 U.S. 180, 197, 98 S.Ct. 1745, 1757-58, 56 L.Ed.2d 209 (1978).
 
 
 10
 While these tests may prove adequate in most cases, the preemption question still turns upon a "balanced inquiry into such factors as the nature of the federal and state interests in regulation and the potential for interference with federal regulation." Farmer v. United Brotherhood of Carpenters, 430 U.S. at 300, 97 S.Ct. at 1063. The court must discern the intent of Congress in resolving the issue. See Vaca v. Sipes, 386 U.S. at 179, 87 S.Ct. at 911. The federal interest involved in this case is paramount since it is alleged that defendants deprived Silkwood of her constitutional right to travel by endangering her life and safety on the public highway[4] and that government officials conspired to deprive private citizens of their constitutional rights. Additionally, the actions allegedly taken by the private persons could constitute "official lawlessness" because of the alleged conspiracy with government officials. See United States v. Price, 383 U.S. 787, 794-95, 86 S.Ct. 1152, 1157-58, 16 L.Ed.2d 267 (1966). Entrusting the exclusive power of vindicating these constitutional rights to the NLRB, which may refuse to hear a case at will, raises grave constitutional implications, see Vaca v. Sipes, 386 U.S. at 182-83, 87 S.Ct. at 912-13, heightened by the NLRB's lack of expertise in constitutional matters, a field traditionally reserved to the courts. Seay v. McDonnell Douglas Corp., 427 F.2d 996, 1002-03 (9th Cir. 1970). Moreover, the NLRB lacks jurisdiction over government officials charged as defendants in this case, see Fulton v. Emerson Electric Co., 420 F.2d 527, 530 (5th Cir. 1969), cert. denied, 398 U.S. 903, 90 S.Ct. 1689, 26 L.Ed.2d 61 (1970), and lacks power to award damages against any of these parties for redress of these constitutional infringements. Ruling that the Board has exclusive jurisdiction in this area would give free rein to government officials and private parties acting in concert with them to violate the constitutional rights of others with impunity. Congress could not have intended such a result. We therefore hold that jurisdiction is proper in this case.
 
 Section 1985(3)
 
 11
 Plaintiff contends the complaint sufficiently states causes of action under 42 U.S.C. § 1985(3). The district court found the complaint lacking because the class-based animus was directed toward a group "which did not tend to exist prior to the occurrence of the events set forth in the complaint and which (tended) to be defined by one particular activity or by plaintiff's individual situation." 460 F.Supp. at 407.
 
 
 12
 Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 1798-99, 29 L.Ed.2d 338 (1971), defines the requisites of a valid complaint under § 1985(3). One requirement is that the conspiracy be formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." Id. Read literally the statute has nearly unlimited application to private conspiracies designed to deprive persons of the equal protection of the law. To avoid construing the statute as a general federal tort law and to effectuate the purposes of Congress, the Court limited the Act's application by requiring as an element of the cause of action "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id. at 102, 91 S.Ct. at 1798.
 
 
 13
 Other courts considering the viability of § 1985(3) actions for conspiracies against unions have uniformly found insufficient class-based animus. Taylor v. Brighton Corp., 616 F.2d 256 (6th Cir. 1980); Iowa Beef Processors, Inc. v. Gorman, 476 F.Supp. 1382 (D.C.); Amalgamated Clothing and Textile Workers Union v. J. P. Stevens & Co., Inc., 475 F.Supp. 482 (S.D.N.Y.1979). Similar rulings have been made in cases of employees claiming discrimination by unions and/or employers. Bova v. Pipefitters Local 60, 554 F.2d 226 (5 Cir.); McLellan v. Mississippi Power & Light Co., 545 F.2d 919 (5th Cir. 1977); Western Telecasters v. California Federation of Labor, 415 F.Supp. 30 (S.D.Cal.1976).
 
 
 14
 Even if a union or group which has particular views on nuclear safety can be a class within the meaning of section 1985(3), no cause of action is stated here. The complaint must show "invidiously discriminatory animus" on the part of defendants. Griffin v. Breckenridge, 403 U.S. at 102, 91 S.Ct. at 1798. At least one court has found this requires a showing of "a considerable degree of unjustifiability or irrationality." McLellan v. Mississippi Power & Light Co., 526 F.2d 870, 879 (5th Cir. 1976), vacated in part on other grounds en banc, 545 F.2d 919. Another court has required a showing of an "irrational and odious class discrimination akin to racial bias-such as discrimination based on national origin or religion." Arnold v. Tiffany, 359 F.Supp. 1034, 1036 (C.D.Cal.), aff'd on other grounds, 487 F.2d 216, 218 (9th Cir. 1973), cert. denied, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974). Senator Edmunds, in describing the types of conspiracies coming within the purview of the Act, explained:
 
 
 15
 We do not undertake in this bill to interfere with what might be called a private conspiracy growing out of a neighborhood feud of one man or set of men against another to prevent one getting an indictment in the State courts against men for burning down his barn; but, if in a case like this, it should appear that this conspiracy was formed against this man because he was a Democrat, if you please or because he was a Catholic, or because he was a Methodist, or because he was a Vermonter, ... then this section could reach it.
 
 
 16
 Cong.Globe, 42d Congress, 1st Sess. 567 (1871).
 
 
 17
 To state a cause of action under section 1985(3) the law requires prejudice against a class qua class. Here it seems clear from the complaint as a whole that the feud, if there is one, is private; no general prejudice which transcends the immediate dispute is shown. Rather the hatred which defendants allegedly harbor is against Karen Silkwood and her associates arising out of the activities of parties involved. See Lessman v. McCormick, 591 F.2d 605, 608 (10th Cir. 1979). We hold this is essentially a private feud not within the intended scope of the Act's coverage. As was aptly stated by the district court, to hold otherwise would make § 1985(3) "applicable to all conspiratorial interferences with the rights of others, as there are no bounds upon the ingenuity of counsel in pleading novel and diverse classes to fit every conceivable situation." 460 F.Supp. at 407.
 
 The Bivens Claim
 
 18
 The district court granted summary judgment on the Bivens claim against plaintiffs because the FBI allegedly became involved in the conspiracy only after the death of Karen Silkwood and, therefore, could not have violated her rights. Plaintiffs urge that the FBI defendants, by joining a conspiracy with knowledge of its illegal purpose, ratified and became liable for the conspirators' prior acts.
 
 
 19
 The conspiracy's alleged purpose was two-fold: to violate the rights of Silkwood and others, and to cover up these violations. We agree with the Ninth Circuit that the civil rights of a person cannot be violated once that person has died. Guyton v. Phillips, 606 F.2d 248, 250-51 (9th Cir. 1979), cert. denied, 445 U.S. 916, 100 S.Ct. 1276, 63 L.Ed.2d 600 (1980). See also Whitehurst v. Wright, 592 F.2d 834, 840-41 (5th Cir. 1979); Roe v. Wade, 410 U.S. 113, 157-59, 93 S.Ct. 705, 729-30, 35 L.Ed.2d 147 (1975) (unborn fetus not a "person" for purposes of Civil Rights Act). It is clear then that the FBI agents could not have violated the civil rights of Silkwood by cover-up actions taken after her death.
 
 
 20
 Additionally, with the death of Silkwood, the conspiracy to violate her rights terminated. Thus, the FBI defendants could not be held liable for the prior violations of Silkwood's constitutional rights even if a Bivens claim encompasses a relation back theory of conspiracy law. Guyton v. Phillips, 606 F.2d at 251.
 
 
 21
 We hold that the plaintiffs have not stated a cause of action under the Civil Rights Act of 1871 or the Constitution of the United States and the district court's dismissal was proper.
 
 
 22
 Affirmed.
 
 
 
 [1]
 Kerr-McGee officials and agents named in the complaint are: Dean A. McGee; James J. Kelly; Peter Colefax; Earl M. Jorgensen; Edwin L. Kennedy; Breene M. Kerr; Robert S. Kerr, Jr.; F. C. Love; George B. Parks; J. B. Saunders; A. P. F. Seale; James E. Webb; R. T. Zitting; Parker S. Dunn; Wayne Norwood; Ronald Adkisson; Roy E. King; G. T. Sinke; J. Marler; G. France; James Reading; Fred Welch; and Weldon C. Gentry
 
 
 [2]
 Agents of the FBI included as defendants are Lawrence Olson, Theodore Rosack, and "One Named but Unidentified Agent of the Federal Bureau of Investigation." Jacque Srouji is alleged to be an official informant for the FBI and for purposes of this case was treated as an FBI agent
 
 
 [3]
 The court retained jurisdiction over other claims which have now been tried and are the subject of a separate appeal. Silkwood v. Kerr-McGee Corp., 485 F.Supp. 566 (W.D.Okl.1979), appeal pending No. 79-1879
 
 
 [4]
 No state action is required to give rise to a cognizable suit in this context. Griffin v. Breckenridge, 403 U.S. 88 at 105-06, 91 S.Ct. 1790 at 1800-01, 29 L.Ed.2d 338