Thomas A. FISKE, Alison Beckley, Roshanda Blackwell, Garrett D. Brown, Milton T. Chee, Judith A. Coren, Christopher P. Hoeppner, Andree S. Kahlmorgan, Robert R. Lutton, Jeffrey L. Martin, Michael Pennock, Jeffrey E. Rogers, Jean R. Savage, Sally L. Thorsen and Gregory J. Zensen, Plaintiffs,

v.

LOCKHEED–GEORGIA COMPANY, A DIVISION OF LOCKHEED CORPORATION, John Thompson, Edward Garbers, Robert F. Lang, George Slicho, Ron Hudson, Bill Pope, C.H. Bankston, Joe Doe and Richard Doe, Defendants.

Civ. A. No. C82–2061A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 1, 1983.

against the company and several of its employees. They seek actual and punitive damages as a result of alleged illegal investigatory activities by defendants which all but one of the plaintiffs claim led to their discharge. Plaintiffs were active in Local Lodge 709 of the International Association of Machinists and Aerospace Workers (the Union) and in the Socialist Workers Party (SWP). This union and political activity, plaintiffs allege, was the reason for the investigation and discharge. They claim defendants violated 42 U.S.C. § 1985(3) by illegally conspiring to deprive them of their first amendment rights, that the investigation and discharge violated the collective bargaining agreement and thus § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and that defendants' investigatory activities violated plaintiffs' privacy rights under state law.

Defendants' have moved to dismiss or alternatively, for summary judgment. The court postponed ruling on this motion pending the Supreme Court's decision in *United Brotherhood of Carpenters and Joiners of America v. Scott,* —— U.S. ——, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) *rev'g, Scott v. Moore,* 680 F.2d 979 (5th Cir.1982). Now that that decision has been handed down, the court proceeds with the motion before it.

Thomas C. Shelton, Edmund M. Kneisel, Kilpatrick & Cody, Atlanta, Ga., for defendants Hudson, Pope, Bankston, Land, Garbers, Thompson and Lockheed-Georgia Co.

Robert P. Barton, Legal Dept., Marietta, Ga., for Lockheed-Georgia Co.

John G. Creech, Haynsworth, Baldwin, Miles, Johnson, Greaves & Edwards, Greenville, S.C., for D. Parr as to mot. for prot. ord.

## ORDER

ROBERT H. HALL, District Judge.

This action was brought by a group of former Lockheed-Georgia Company (Lockheed) employees and one current employee

### 1. 42 U.S.C. § 1985(3)

Plaintiffs' first cause of action is based upon 42 U.S.C. § 1985(3), providing a remedy for those injured by conspiracies formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." [1]

---

1. 42 U.S.C. § 1985(3) provides in pertinent part as follows:

(3) Depriving persons of rights or privileges. If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages

For the most part, plaintiffs were hired between March and September, 1980, as aircraft assemblers.[2] They allege that as Lockheed employees, they were political and union activists. In particular, plaintiffs actively campaigned for the Socialist Workers Party's 1980 presidential candidate and advocated the formation of a labor party which would advance the interests of the working class. Plaintiffs allege that in late 1980, Lockheed became aware of their political and union views and consequently, all but one of them were fired. Lockheed contends that plaintiffs were terminated because they falsified certain information on their employment applications. The discharged plaintiffs apparently do not deny that they falsified their applications, but argue that this reason was merely a pretext for firing plaintiffs because of their political beliefs and activities.

Plaintiffs allege that Lockheed launched an investigation of them in October, 1980, after learning that some of the plaintiffs had attempted to distribute SWP election campaign literature at a union meeting. Plaintiffs allege that during the course of the investigation, Lockheed security personnel employed numerous intrusive and illegal techniques to spy on plaintiffs, including the use of informers to obtain information on plaintiffs' union, political, and personal activities, surveillance of plaintiffs both on and off the job, and use of an electronic listening device to intercept a conversation between two of the plaintiffs. These actions, plaintiffs allege, demonstrate a conspiracy on the part of defendants to deprive them of their first amendment rights in violation of 42 U.S.C. § 1985(3).

In their motion to dismiss the § 1985(3) claim, defendants argue that plaintiffs do not state a cause of action under the statute because § 1985(3) requires state action, and plaintiffs do not constitute a class protected by the statute. In *United Brotherhood of Carpenters and Joiners of America v. Scott,* — U.S. —, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), the Supreme Court recently

addressed the question of the scope of § 1985(3). There, a construction company who had hired nonunion workers for a project was the target of a citizen protest at a meeting of the Executive Committee of the Sabine Area Building and Construction Trades Council. At the protest, company employees were assaulted and beaten and construction equipment destroyed. The violence delayed construction and caused the company to default on its contract. The company then sued the Trades Council and certain local unions and individuals, asserting a conspiracy to deprive it of its first amendment right not to associate with a union in violation of § 1985(3).

The Court dealt with the state action question first. The Court held that "when the alleged conspiracy is aimed at a right that is by definition a right only against state interference," the plaintiff must "prove that the conspiracy contemplated state involvement of some sort." *Id.* at —, 103 S.Ct. at 3358. Since the first amendment rights are rights only against government interference, the *Scott* plaintiffs were required to show state involvement. The Court distinguished *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), widely believed to mean that § 1985(3) reaches purely private conspiracies and so interpreted by the courts below in *Scott.* The Court held that the statute does reach private conspiracies but only where, as in *Griffin,* the rights involved are protected against private, as well as official encroachment, such as the rights protected by the thirteenth amendment and the right to travel.

The Court did not extensively detail the state involvement required because it also held that the plaintiffs were not a class protected by § 1985(3). The Court merely stated that an alleged conspiracy to violate first amendment rights is not a violation of § 1985(3) unless it is shown that the "state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state." *Scott, supra,* — U.S. at

occasioned by such injury or deprivation, against any one or more of the conspirators.

**2.** Plaintiff Fiske was hired as a turret lathe operator in May, 1979.

——, 103 S.Ct. at 3357. Although this general statement provides little guidance, it is probable that the state action requirement under § 1985(3) is the same as that required under § 1983 and the fourteenth amendment.[3]

Lockheed argues that state action is lacking in the case at hand because plaintiffs do not show that Lockheed or any of the named defendants conspired with the government. However, plaintiffs alleged that Lockheed employees conspired with, exchanged information with, and obtained assistance from Captain Brad Pope of the Cobb County Police Department's Intelligence Division. They allege that Pope told Lockheed employees and defendants Robert Lang and George Slicho that the SWP was a "violent" organization and that Pope provided Lang or Slicho with the address of a person listed as an emergency contact on the employment application of Patricia Brown, who was suspected of being an SWP member. Complaint, ¶ 46.

Additionally, plaintiffs allege that Lockheed employees solicited assistance from at least four FBI offices during the course of the investigation. They claim that FBI Special Agent John Donahue conspired with defendant Lang and provided him with information about plaintiffs Savage and Martin. Complaint, ¶ 47. Finally, plaintiffs allege a close relationship between Lockheed and the federal government in that much of Lockheed's business is conducted pursuant to defense contracts with federal agencies. Plaintiffs claim that the United States Air Force owns most of the facilities at the Lockheed plant which it leases to the company for a nominal sum. The Department of Defense is said to extensively regulate Lockheed's operations and to influence its personnel decisions. Complaint, ¶ 18.

These allegations certainly suffice to fulfill the requirement that it be alleged with sufficient specificity that defendants acted jointly and as part of a plan to infringe plaintiffs' constitutional rights. *See Gomez v. Florida State Employment Service,* 417 F.2d 569, 578 (5th Cir.1969). The requirement that the accused act under color of law does not mean that he must be an officer of the state. "It is enough that he is a willful participant in joint activity with the State or its agents." *Id.* (quoting *United States v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)). Plaintiffs allege that Lockheed conspired with both state and federal officials [4] mainly in the form of exchanging information and obtaining other assistance. These allegations suffice to fulfill the state action requirement for stating a cause of action under § 1985(3).

More crucial for plaintiffs, however, is the second aspect of the Court's holding in *Scott.* In *Griffin v. Breckenridge, supra,* the Court had held that there must be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" for there to be a violation of § 1985(3). 403 U.S. at 102, 91 S.Ct. at 1798. Because the facts in *Griffin* revealed an animus against blacks and those who supported them, "a class-based, invidious discrimination which was the central concern of Congress in enacting § 1985(3)," the Court there declined to decide if a non-racially biased conspiracy would be actionable under the statute. *Scott, supra,* —— U.S. at ——, 103 S.Ct. at 3358. In *Scott,* the district court and the court of appeals had held that a conspiracy to harm the non-union employees of a non-unionized contractor embodied the kind of class-based animus contemplated by § 1985(3), as interpreted by *Griffin.* The Supreme Court reversed, holding that § 1985(3) does not reach conspiracies motivated by economic or commercial animus.

---

3. "Decisions that 'state action' is or is not present are fully controlling precedents in determining whether the 'color of law' required by the language of § 1983 is present." 1 C. Antieau, *Federal Civil Rights Acts* § 59, at 111 (2d ed. 1980).

4. Actions of any governmental entity give rise to state action for purposes of the fourteenth amendment and thus for §§ 1983 and 1985(3). *See* J. Nowak, R. Rotunda and J. Young, *Constitutional Law* at 452 (1978); note 3, *supra.*

Defendants argue that the decision in *Scott* means that § 1985(3) does not reach conspiracies motivated by political animus.[5] To support that view, they point to the following language in *Scott:*

[I]t is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans.... Although we have examined with some care the legislative history that has been marshalled in support of the position that Congress meant to forbid wholly non-racial, but politically motivated conspiracies, we find difficult the question whether § 1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means. To accede to that view would go far toward making the federal courts, by virtue of § 1985(3), the monitors of campaign tactics in both state and federal elections, a role that the courts should not be quick to assume.

—— U.S. at ——, 103 S.Ct. at 3359.

Plaintiffs, on the other hand, argue that *Scott* does not foreclose a holding by this court that politically motivated conspiracies are within the scope of § 1985(3), pointing to language in *Scott* by which the Court clearly declines to reach this specific question.[6] Plaintiffs argue that the dissimilarity between the political animus in the case at bar and the economic or commercial animus addressed in *Scott* is shown by the following language in that opinion:

We thus cannot construe § 1985(3) to reach conspiracies motivated by economic or commercial animus. Were it otherwise, for example, § 1985(3) could be brought to bear on any act of violence resulting from union efforts to organize an employer or from the employer's efforts to resist it.... Moreover, if anti-union, anti-nonunion, or anti-employer biases represent the kinds of animus that trigger § 1985(3), there would be little basis for concluding that the statute did not provide a cause of action in a variety of other situations where one economic group is pitted against another, each having the intent of injuring or destroying the economic health of the other.

*Id.* at ——, 103 S.Ct. at 3360–61.

Both sides cite cases in which other courts have either held that § 1985(3) does not reach politically motivated conspiracies, *see, e.g., Hahn v. Sargent,* 523 F.2d 461 (1st

---

**5.** Defendants argue that the court need not reach the question whether § 1985(3) prohibits conspiracies motivated by a political animus because "the alleged civil rights violations for which plaintiffs seek relief occurred only because of their status as former or present Lockheed employees and not because of their status as members or supporters of the SWP." Defendants rely on *Silkwood v. Kerr-McGee Corp.,* 637 F.2d 743 (10th Cir.1980). There, it was alleged that company officials conspired to prevent Silkwood and other of the nuclear facility's employees from organizing a labor union and reporting safety violations to the Atomic Energy Commission.

In deciding whether a claim was stated under § 1985(3), the court first indicated its belief that an anti-union animus is not sufficient. It then went on to hold that even if a union or group with particular views on nuclear safety can be a class within § 1985(3), no cause of action was stated because the statute requires "prejudice against a class *qua* class. Here it seems clear from the complaint as a whole that the feud, if there is one, is private; no general prejudice which transcends the immediate dispute is shown." *Id.* at 748.

Assuming arguendo that *Silkwood* is correct, the court finds that facts are alleged in the case at bar show a general prejudice transcending the immediate dispute. Here, the alleged class is a group of employees bound together by their political beliefs. Plaintiffs allege that defendants were motivated by a desire to rid its workforce of a specific group of political and union activists. They contend defendants investigated and ultimately fired plaintiffs due to their political and union beliefs and activities, both related and unrelated to Lockheed. While the actions in *Silkwood* were all related to plaintiffs' work related activities, the allegations here are that defendants acted in response to non-work related activities as well. Here, more than a private feud is alleged.

**6.** The Court stated that "[e]ven if [§ 1985(3)] must be construed to reach conspiracies aimed at any class or organization on account of its political views or activities," there was no convincing support in the legislative history for the view that the section reached conspiracies motivated by economic bias. —— U.S. at ——––——, 103 S.Ct. at 3360.

Cir.1975); *Savina v. Gebhart,* 497 F.Supp. 65 (D.Md.1980), or that it does reach that far. *See, e.g., Keating v. Carey,* 706 F.2d 377 (2d Cir.1983); *Means v. Wilson,* 522 F.2d 833 (8th Cir.1975), *cert. denied,* 424 U.S. 958, 96 S.Ct. 1436, 47 L.Ed.2d 364 (1976). In *Keating,* the Second Circuit considered the § 1985(3) claim of a New York state employee, fired because he was a Republican when Democratic Governor Hugh Carey took over. The court examined the legislative history of the Ku Klux Klan Act of which § 1985(3) is a part, and concluded that the Congress of 1871 "did not view the Klan solely as a racist organization to oppress blacks but as a political organization intent on establishing Democratic hegemony in the South." 706 F.2d at 387. Although the Klan's main targets, other than blacks, were Republicans, the court held that Congress did not seek to protect only Republicans, but to prohibit political discrimination in general.

Nevertheless, *Keating* was decided before *Scott* and this court's decision must ultimately be based on *Scott.* Even though the Supreme Court did not specifically reach the question of whether politically motivated conspiracies are within the scope of § 1985(3), the Court strongly hinted that they are not. The language quoted above indicates to this court that the Supreme Court would decide to exclude political animus. Particularly telling is the Court's statement that although it had examined carefully the legislative history that had been marshalled in support of the view that Congress meant to prohibit wholly nonracial, but politically motivated conspiracies,[7] it still found "difficult" the question whether § 1985(3) extended so far.

Additionally, the Court stated that despite its awareness of this legislative history when it decided *Griffin,* in that case it "still withheld judgment on the question whether § 1985(3), as enacted, went any farther than its central concern—combatting the violent and other efforts of the Klan and its allies...." —— U.S. at ——, 103 S.Ct. at

3360. The Court stated, "Lacking other evidence of congressional intention, we follow the same course here." *Id.* In view of this language, this court cannot hold that § 1985(3) reaches politically motivated conspiracies.

**2. § 301**

Plaintiffs' second cause of action is brought under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and alleges that the conspiratorial activities discussed above also violated the terms of the collective bargaining agreement between Lockheed and the Union. Plaintiffs also allege that although they filed grievances, Union officials processed them in a perfunctory manner, thereby breaching the duty of fair representation owed to plaintiffs. The Union, however, is not named as a defendant.

Defendants have moved for summary judgment with respect to plaintiffs' § 301 claim, contending that it is barred by the statute of limitations. Until quite recently, it was not clear what statute of limitations governed § 301 claims. While this case was pending, however, the Supreme Court handed down its decision in *DelCostello v. International Brotherhood of Teamsters,* —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). There, the Court held that employee suits under § 301 alleging the employer's breach of a collective bargaining agreement and the union's breach of its duty of fair representation are governed by the six-month limitations period in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), for filing unfair labor practice charges with the National Labor Relations Board.

It is clear that plaintiffs' § 301 claim is barred under *DelCostello.* The suit was filed on September 20, 1982, more than one and a half years after the final dispositions of their grievances. By any measure, it is clear that plaintiffs did not file their suit within the required six-month period in § 10(b).

**7.** The court acknowledged Senator Edmunds's statement that "if a conspiracy were formed against a man 'because he was a Democrat, if you please, or because he was a Catholic, or because he was a Methodist, or because he was a Vermonter, ... then this section could reach it.'" —— U.S. at ——, 103 S.Ct. at 3360 (quoting Cong. Globe, 42d Cong., 1st Sess. 567).

**596**

### 3. State Law Privacy Claims

Plaintiffs' final cause of action alleges that defendants' use of electronic surveillance and informants, and the circulation of false rumors and embarrassing facts about plaintiffs constituted an intentional invasion of their privacy. Plaintiffs invoke the doctrine of "pendent jurisdiction" to assert their invasion of privacy claims in federal court.

In light of the court's action with respect to the § 1985(3) and § 301 causes of action, additional briefs on the proper disposition of plaintiffs' state law privacy claims are believed appropriate. Particularly, the parties are to brief what effect the dismissal of the two federal claims has on the court's jurisdiction of the state claim, and whether the state claim is preempted by federal labor laws. In connection with the preemption question, the parties should address the effect, if any, of the holding that plaintiffs' § 301 claim in this case is time-barred.

In sum, defendants' motions to dismiss plaintiffs' § 1985(3) claim and for summary judgment with respect to plaintiffs' § 301 claim are GRANTED. Plaintiffs are directed to submit their additional brief on the privacy claim within 15 days, after which defendants will have 15 days to respond.