**Deborah MORRIS, Plaintiff,**

v.

**CHEM–LAWN CORP., Defendant.**

**Civ. No. 81–73116.**

United States District Court,
E. D. Michigan, S. D.

June 10, 1982.

**480**

James Wynne, Detroit, Mich., for plaintiff.

Richard J. Seryak, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This matter is before the Court on plaintiff's motion to amend her complaint and defendant's motion to dismiss and for summary judgment. This civil action was removed to this Court from Wayne County Circuit Court. Jurisdiction is based on diversity of citizenship. Plaintiff claims that she was discharged from defendant's employ without good cause, contrary to the terms of her contract of employment. She seeks to add a count to her complaint to allege that she was discharged for supporting the formation of a union in violation of

her rights under the first amendment and Title 29 of the United States Code. Although not specified in her proposed amended complaint, plaintiff's motion to amend identifies this claim as arising under 42 U.S.C. § 1985.

Defendant objects to plaintiff's motion to amend her complaint, asserting that the proposed Count II fails to state a claim upon which relief can be granted. Defendant asserts that the subject matter of Count II is arguably an unfair labor practice within the meaning of 29 U.S.C. § 158(a)(3) over which the National Labor Relations Board has exclusive primary jurisdiction. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Defendant also has moved for summary judgment on Count I, asserting that plaintiff has failed to show that a genuine issue of material fact exists with respect to her claim that she was discharged without good cause in violation of her employment contract with defendant.

▮ Plaintiff's claim in Count I is based squarely on the recent case of *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980), in which the Michigan Supreme Court held that parties to an employment contract for an indefinite term may agree that the employee will not be discharged except for cause. Such a provision may become part of the contract either by an express oral or written agreement or as a result of the employee's legitimate expectations grounded on the employer's policy statements. *Id.* at 598, 292 N.W.2d 880. In *Toussaint*, the court held that the plaintiff's testimony that he was told that he would be with the company "as long as I did my job" made submissible to the jury the question of whether there was an agreement for a contract of employment terminable only for cause. *Id.* at 597, 292 N.W.2d 880.

Like the plaintiff in *Toussaint*, plaintiff in the instant action asserts that she was told that she would have a job as long as she performed her duties satisfactorily. In her deposition, Deborah Morris stated that when she was hired by Chem-Lawn, she was told by a company employee that:

as long as I carried out the duties of a secretary and would carry out the responsibilities that I would have a job for however long. His exact words were that I could make a career out of this company; that it's a good company to make a career out of .... He told me if ... I carried out my duties, I could expect to make Chem-Lawn my career. (Plaintiff's deposition at 23–24).

The court in *Toussaint* observed that employers who have not agreed to job security can protect themselves by requiring prospective employees to acknowledge that they served at the will of the company, for example, by entering into a written contract which explicitly so provides. *Id.* at 612, and 612 n.24, 292 N.W.2d 880. Attached to plaintiff's complaint are three employment agreements, signed by her and dated November 5, 1978, February 22, 1979, and November 11, 1979. These contracts contain a provision stating: "The Employee's employment with the Company may be terminated by either party at any time." However, as plaintiff notes, the contract is silent on whether the employer must have good cause to terminate the employee. The provision in the contract enabling either party to terminate the employment relationship at any time can be construed as merely creating a contract for an indefinite term, which does not necessarily result in an agreement that the employee may be terminated for any reason. Following the reasoning in *Toussaint*, it is clear that plaintiff has raised an issue of material fact with respect to the existence of an agreement to terminate her employment only for cause by her deposition testimony that she was told that she would have a job at Chem-Lawn as long as she carried out her duties as a secretary.

However, this conclusion does not dispose of the matter. An examination of plaintiff's deposition testimony reveals that her claim that she was discharged without good cause is based solely upon allegations that her employer discharged her because of her support of the formation of a labor union.

In her deposition, plaintiff testified as follows:

Q. Now, you think you were fired from Chem-Lawn because of your union activity. Is that right?

A. Yes, I do.

Q. And the reason is your involvement with the union.

A. Yes.

Q. You were sympathetic towards the union. Is that right?

A. Yes.

Q. And that's the reason for your termination?

A. Yes.

Q. Did anybody from the company tell you that?

A. No.

Q. As far as you're concerned, that's why you were fired.

A. Yes.

Q. Any other reason?

A. No.

(Plaintiff's deposition p. 20).

Q. What is it you're claiming in this law suit?

A. That I was fired due to union activities.

(Plaintiff's deposition p. 55).

Furthermore, plaintiff has submitted a number of interrogatories to defendant with respect to labor disputes and attempts to organize the defendant's employees while plaintiff was an employee which defendant has refused to answer as irrelevant to this action. On January 19, 1981, plaintiff filed a motion to compel answers to these objected to interrogatories, asserting that her discharge

> was based primarily on the fact that Defendant was annoyed with her due to her active and vocal support of Defendant's employee's efforts to unionize and bargain collectively in 1980.

Although defendant raises the labor pre-emption issue only in connection with plaintiff's motion to add a claim under U.S.C. § 1985, it is equally, if not more pertinent to plaintiff's breach of contract claim based on state law, for as plaintiff notes, the pre-emption doctrine articulated in *Garmon* was developed to determine "the extent to which state regulation [of labor relations] must yield to subordinating federal authority." *San Diego Building Trades Council v. Garmon, supra*, 359 U.S. at 241, 79 S.Ct. at 777. In the case of *San Diego Building Trades Council v. Garmon, supra*, the Supreme Court set forth the pre-emption doctrine as follows:

> When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

*Garmon, supra* at 245, 79 S.Ct. at 780. The Act referred to is the National Labor Relations Act, 29 U.S.C. §§ 157, 158. Section 7 of the Act provides that employees have the right to organize, to form labor unions, and to engage in other concerted activities for the purposes of collective bargaining. Section 8(a)(1) of the Act provides that it is an unfair labor practice for an employer to interfere with an employee's exercise of section 7 rights. Section 8(a)(3) provides that it is an unfair labor practice for an employer to discriminate in regard to hire or tenure of employment to discourage membership in a labor organization.

Plaintiff's claim in Count I is couched in terms of breach of an employment contract. However, the basis of her claim, as revealed in her deposition and in her motion to compel discovery, is that her employer discharged her because of her support of organizing a union. Such an allegation is clearly an arguable violation of § 8(a)(3) of the National Labor Relations Act. The Supreme Court has indicated that the application of the pre-emption doctrine does not depend on the legal theories which plaintiff chooses to frame her claim but upon the nature of the conduct involved. In *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971), the Court stated:

Pre-emption ... is designed to shield the system from conflicting regulation of conduct. It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern.

*Id.* at 292, 91 S.Ct. 1920.

Pre-emption cannot be avoided simply by invoking a state law of general application rather than one specifically aimed at regulating industrial relations. *San Diego Building Trades Council v. Garmon, supra,* 359 U.S. at 244, 79 S.Ct. at 779; *Sears, Roebuck & Co. v. San Diego District Council of Carpenters,* 436 U.S. 180, 193, 98 S.Ct. 1745, 1755, 56 L.Ed.2d 209 (1978). Application of the pre-emption doctrine depends "upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies of concurrent judicial and administrative remedies", *Vaca v. Sipes,* 386 U.S. 171, 180, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967). Courts must make "a balanced inquiry into such factors as the nature of the federal and state interests in regulation and the potential for interference with federal regulation." *Farmer v. United Brotherhood of Carpenters,* 430 U.S. 290, 300, 97 S.Ct. 1056, 1063, 51 L.Ed.2d 338 (1977). The Supreme Court has identified "the critical inquiry" as "whether the controversy presented to the state court is identical to ... or different from ... that which could have been, but was not, presented to the Labor Board." *Sears, Roebuck & Co. v. San Diego District Council of Carpenters, supra* at 197, 98 S.Ct. at 1757.

Several exceptions to the pre-emption rule have been identified. For example, federal courts have jurisdiction under 29 U.S.C. § 185 to hear claims for breach of collective bargaining agreements that also constitute unfair labor practice claims under § 8 of the NLRA. *Vaca v. Sipes, supra.* The pre-emption doctrine does not apply where the activity regulated is a peripheral concern to the federal labor laws or where the regulated conduct touches interests deeply rooted in local feeling and responsibility. *San Diego Building Trades Council v. Garmon, supra,* 359 U.S. at 243, 79 S.Ct. at 778. *See, e.g., Linn v. Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (picket line violence). However, none of these exceptions apply to this action. Plaintiff's claim in Count I that she was discharged because of her support for a union, although couched in terms of breach of an employment contract, is identical to a claim of unfair labor practice in violation of § 8 of the NLRA which could be adjudicated by the NLRB. Since the pre-emption doctrine deprives plaintiff of the benefit of the Michigan substantive law upon which she bases her claim, defendant's motion to dismiss Count I of plaintiff's complaint must be granted for failure to state a claim, although not on the grounds urged by defendant.

In view of the conclusion that plaintiff's original complaint must be dismissed because her claim is pre-empted by the federal labor laws, the Court need not reach plaintiff's motion to amend her complaint to add a claim pursuant to 42 U.S.C. § 1985(3). However, since this matter has been extensively briefed and argued by the parties, and its disposition turns on similar considerations as plaintiff's breach of contract claim, it seems appropriate to dispose of it as well.

The *Garmon* case specifically provided that federal as well as state courts must defer to the NLRB when an activity is arguably subject to § 7 or § 8 of the NLRA. Plaintiff labels such a rule as wrong and dictum, maintaining that pre-emption of the federal labor laws only applies to state court interference. Plaintiff cites no authority in support of this position, so this Court gives it little credence.

Plaintiff relies primarily on the recent Tenth Circuit case of *Silkwood v. The Kerr-McGee Corporation,* 637 F.2d 743 (10th Cir. 1980) to support her contention that the National Labor Relations Act does not pre-empt her § 1985 claims. The plaintiff in *Silkwood* alleged a deprivation of civil rights through a course of conduct involving wiretapping, surveillance, discriminatory firing, breaking and entering and life-en-

dangering harassment on the public highways. The court found that such claims would not come within the protection of the NLRA and thus the potential for conflict between the NLRA and the federal cause of action was nonexistent. Moreover, the court noted that the federal government had a deeply rooted interest and responsibility to proscribe such conduct. *Id.* at 746. Finally, and most importantly, the court concluded that although the adjudication of the issues in plaintiff's § 1985 claim would duplicate the issues underlying a claim based on sections 7 and 8 of the NLRA, the federal interest involved in plaintiff's claims of deprivation of the right to travel and of a conspiracy of government officials was paramount, particularly since the NLRB would have no jurisdiction over the government officials charged as defendants.

■ In the instant case, plaintiff asserts in her proposed amended complaint that defendants conspired to deprive her of her first amendment rights and her enjoyment of equal protection of the law and of privileges and immunities under the laws, all in violation of 42 U.S.C. § 1985(3). The only conduct she complains of is that she was discharged from her employment because of her union sympathies. This case is not like the *Silkwood* case in that there clearly exists a potential for conflict of substantive law between the NLRA and § 1985 and plaintiff's claim does not involve the type of intrusive, life-endangering, unconstitutional conduct alleged in *Silkwood*. Finally, not only would adjudication of plaintiff's § 1985 claims duplicate a claim based on § 8 of the NLRA before the NLRB, but plaintiff here does not claim that government officials participated in the conspiracy, which was an important consideration in the *Silkwood* court's conclusion.

This case is more like the case of *Iowa Beef Processors, Inc. v. Gorman*, 476 F.Supp. 1382 (N.D. Iowa 1979) where the defendant filed a counterclaim asserting that plaintiff had conspired in violation of § 1985 and acted to interfere with defendant's rights to affiliate with a labor union. The court granted plaintiff's motion to dismiss, concluding that the controversy presented identical issues to those which could be presented to the NLRB. Plaintiff's § 1985 claim in this action is identical in substance to her breach of contract claim, both of which are identical to an unfair labor practice claim which could have been presented to the NLRB under § 8(a)(3) of the NLRA. Therefore, this Court lacks jurisdiction to consider plaintiff's claims as set out in her proposed Count II, the NLRB having exclusive jurisdiction over such claims.

■ Furthermore, plaintiff's proposed Count II fails to state a claim for violation of 42 U.S.C. § 1985(3). Section 1985(3) provides no substantive rights itself. It merely provides a civil cause of action for the deprivation of some otherwise defined right to the equal protection of the laws or of equal privileges and immunities of the laws by a private conspiracy. *Great American Federal Savings & Loan Ass'n. v. Novotny*, 442 U.S. 366, 372 & 376, 99 S.Ct. 2345, 2349 & 2351, 60 L.Ed.2d 957 (1979). The Supreme Court has limited the application of § 1985 by requiring as an element of the claim "some racial, or perhaps otherwise invidiously discriminatory animus behind the conspirator's action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Therefore, to state an actionable claim for violation of § 1985(3), a plaintiff must allege that defendants have conspired in violation of some federal right other than as defined in § 1985(3) and that such conduct was motivated by class-based animus. *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919, 924 (5th Cir. 1977).

■ Plaintiff claims that she was deprived of her first amendment right of free speech by a conspiracy among her employer and several of its employees to discharge her because she expressed her support for a labor union. However, the Constitution proscribes governmental, not private conduct. *Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 114, 93 S.Ct. 2080, 2092, 36 L.Ed.2d 772 (1973). In *Hudgens v. NLRB*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976) when

considering whether the right of labor union members to picket in a privately owned shopping center should be decided under the NLRA or the first amendment, the Supreme Court noted that

> It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state. Thus, while statutory or common law may in some situations extend protection or provide redress against a private corporation or person who seeks to abridge the free expression of others, no such protection or redress is provided by the Constitution itself.

*Id.* at 513, 96 S.Ct. at 1033. The court then concluded that absent the assumption or exercise of municipal functions or power by the owners of the shopping mall, the union members' constitutional rights were not implicated and the dispute would be resolved under the NLRA. *See also Lloyd Corp. v. Tanner,* 407 U.S. 551, 567, 92 S.Ct. 2219, 2228, 33 L.Ed.2d 131 (1972). Plaintiff clearly may not base her claim against defendants on alleged deprivation of her constitutional right to free speech, since they are private entities and persons. Her right to voice her support of a labor union despite the opposition of her employer is governed by the NLRA, not the first amendment. Plaintiff has failed to identify any other federal right upon which she can seek relief under § 1985 and therefore her proposed Count II fails to state a claim under that statute. *Bova v. Pipefitters & Plumbers Local 60,* 554 F.2d 226, 228 (5th Cir. 1977); *Lopez v. Arrowhead Ranches,* 523 F.2d 924, 927 (9th Cir. 1975).

 In addition to alleging a violation of a federal right apart from that provided in § 1985, a plaintiff seeking to assert a claim under that statute must allege that defendant's discriminatory actions were directed towards her as a member of a class, not because of her individual conduct in exercising various constitutional and statutory rights. *Taylor v. Brighton Corp.,* 616 F.2d 256, 266 (6th Cir. 1980); *Arnold v. Tiffany,* 487 F.2d 216 (9th Cir. 1973); *O'Neill v. Grayson County Memorial Hospi-*

*tal,* 472 F.2d 1140 (6th Cir. 1973); *Hughes v. Ranger Fuel Corp.,* 467 F.2d 6, 8 (4th Cir. 1972). *Cf. Glasson v. City of Louisville,* 518 F.2d 899 (6th Cir. 1975). Section 1985(3) is not a general federal tort law, and absent some allegation of class status other than as an individual victim of wrongful conduct, provides no remedy for victims of private discrimination. *Griffin v. Breckenridge, supra,* 403 U.S. at 101–02, 91 S.Ct. at 1797–98; *Kimble v. D. J. McDuffy, Inc.,* 648 F.2d 340, 347 (5th Cir. 1981); *Silkwood v. The Kerr-McGee Corp., supra* at 748; *Lopez v. Arrowhead Ranches, supra* at 928; *Iowa Beef Processors v. Gorman, supra* at 1358. Plaintiff fails to identify in her proposed complaint the class that she is a member of that renders her a victim of discrimination. However, assuming that the class consists of labor union supporters, plaintiff does not allege that defendants singled out the members of such a class for discriminatory treatment, but merely claims that she was singled out because of her own conduct in exercising her constitutional and statutory rights. In the alternative, if plaintiff were to claim that defendants conspired to deprive all Chem-Lawn employees of their right to support a union, her claim would fall squarely within the reasoning of *Taylor v. Brighton Corp., supra,* where the Sixth Circuit held that no class-based deprivation was alleged where plaintiffs claimed that their employer's conduct was aimed at depriving *all* employees of their right to report OSHA violations to the Department of Labor. The wrongful purpose must be directed towards one discrete group and not equally towards all. *Browder v. Tipton,* 630 F.2d 1149, 1153 (6th Cir. 1980).

 Furthermore, although it is clear that non-racial class-based discrimination is actionable under § 1985(3), *see, e.g., Cameron v. Brock,* 473 F.2d 608, 610 (6th Cir. 1973), the Supreme Court in *Griffin* held that not all private conspiracies to interfere with individual rights are covered by § 1985, and characterized the requisite animus as "invidiously discriminatory," language peculiarly reminiscent of traditional equal protection analysis. Accordingly, the

Sixth Circuit, in the case of *Browder v. Tipton, supra,* recently undertook to distinguish between classes protected and those not protected under § 1985(3), utilizing the familiar suspect class, fundamental right concepts of equal protection analysis. The court first considered whether plaintiff's class was a suspect class, or a discrete and insular minority, or a member of a group entitled to more than a "mere rationality" equal protection analysis. *Id.* at 1153. Labor union supporters clearly do not fall within any recognized constitutionally protected class. The court next considered whether the particular exercise of a fundamental right in a class-based manner was the basis for the discrimination and was thus the binding force that joined the class. *Id.* However, as noted previously, plaintiff does not possess a fundamental constitutional right to be free of non-governmental interference with her freedom of speech. The first amendment prohibits only governmental, not private restrictions on individual rights to free speech. Therefore, vocalizing support for a union, unless inhibited by some governmental entity, does not involve the exercise of a fundamental right. *See, e.g., Hudgens v. NLRB, supra.* Since plaintiff was neither a member of a constitutionally protected class nor inhibited in exercising a fundamental right, under the reasoning in *Browder,* she is not a member of a class protected from private conspiracies by § 1985(3). For all the reasons set forth herein, the Court concludes that Count II of plaintiff's proposed amended complaint fails to state a claim and therefore her motion to amend her complaint will be denied.

In summary, plaintiff's motion to amend her complaint will be denied and defendant's motion for summary judgment will be granted as to Count I of plaintiff's original complaint. An appropriate order shall be submitted.