**Brian VEAL, Plaintiff,**

v.

**KERR–McGEE COAL CORPORATION, Defendant.**

**Civ. No. 87–4040.**

United States District Court, S.D. Illinois.

March 29, 1988.

Joseph A. Bartholomew, Cook, Shevlin &
Keefe, Ltd., Belleville, Ill., for plaintiff.

Donald V. Ferrell, Jelliffe, Ferrell & Morris, Harrisburg, Ill., Carolyn G. Hill, Oklahoma City, Okl., for defendant.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This matter comes before the Court *sua sponte* for the purpose of clarifying and, articulating the reasoning behind the Court's prior rulings on defendant's Motion for Summary Judgment, Motion for Judgment on the Pleadings, and Motion for Directed Verdict.

### Background

Plaintiff Veal initiated the instant suit invoking the Court's diversity jurisdiction, claiming damages for 1) retaliatory discharge for becoming a union member,[1] 2) retaliatory discharge in violation of the Illinois and United States Constitutions' First Amendment protection of freedom of association,[2] 3) retaliatory discharge for exercising his rights under the Illinois Workmen's Compensation Act, and 4) the common law tort of intentional infliction of emotional distress. Defendant Kerr–McGee, in the previously described motions, and at oral argument in chambers, vigorously asserted that all, or alternatively, at least some of plaintiff's claims, are preempted by either § 301 or §§ 7, 8 of the National Labor Relations Act, 29 U.S.C. § 141 *et seq.* (NLRA). The Court denied both defendant's Motion for Summary Judgment and Motion for Judgment on the Pleadings primarily on the basis of their § 301 arguments which were highlighted by their citation of this Court's prior decision in *Lingle v. Norge*, 618 F.Supp. 1448 (D.Ill.1985), aff'd 823 F.2d 1031 (7th Cir. 1987), *cert. granted* —— U.S. ——, 108 S.Ct. 226, 98 L.Ed.2d 185 (1987). Thus, the Court primarily ruled on the various motions based on the assumption that defend-

ant was urging preemption based on § 301 of the NLRA.[3]

Because § 301 involves claims which are covered by collective bargaining agreements, and because Kerr–McGee is not a signatory to any such contract with the UMWA, the Court found that plaintiff's claims were not preempted by the NLRA. However, a different conclusion is reached when these claims are evaluated in light of the section 7 and 8 arguments.

### Discussion

The seminal case on preemption of state and common law based claims by sections 7 and 8 of the NLRA (hereinafter the Act) is *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) (*Garmon*). In *Garmon*, the Supreme Court held:

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield.

359 U.S. at 244, 79 S.Ct. at 779.

Furthermore, wrote Mr. Justice Frankfurter:

> When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the dangers of state interference with national policy is to be averted.

359 U.S. at 245, 79 S.Ct. at 780.

Thus, when an activity is either expressly or arguably protected by § 7 or prohibited by § 8, a claim arising out of that activity is preempted by the Act. However, there are exceptions to this doctrine. As Mr.

---

1. Defendant Kerr–McGee is not a signatory to a collective bargaining agreement with the United Mine Workers of America, which plaintiff joined while employed at the company's mine in Galatia, Illinois.

2. This claim is premised on plaintiff's state and federal constitutional right to association (here with other union members).

3. The Court has previously observed that part of the problem with the preemption issue was that the defendant waited until the eve of trial to direct the Court's attention to the legal merits raised by their contentions under sections 7 and 8 of the Act.

Justice Powell noted in *Farmer v. United Bhd. of Carpenters & Joiners*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (*Farmer*):

> Our cases indicate ... that inflexible application of the [preemption] doctrine is to be avoided, especially when the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme.

430 U.S. at 302, 97 S.Ct. at 1064.

*Farmer*, therefore, makes clear that *Garmon* does not stand for proposition that any activity potentially affected by the Act, regardless how tangential, is preempted.

█ Plaintiff asserts that the Court need not address the preemption question because Kerr–McGee waited until the day before trial to raise it in any vigorous manner. It appears then that plaintiff is arguing either waiver or estoppel by Kerr–McGee of that defense. In cases involving activity that is either clearly or arguably protected by § 7 or prohibited by § 8, the Seventh Circuit has said in dicta that preemption in that context is, in fact, jurisdictional.[4] *Jackson v. Consolidated Rail Corp.*, 717 F.2d 1045, 1054-55 (7th Cir. 1983). Subject matter jurisdiction may be challenged by a party or raised *sua sponte* by the court *at any point* in the proceedings. *Jackson*, supra, at 1055. [Emphasis added.] The corollary to this rule is that "subject matter jurisdiction otherwise lacking cannot be conferred by consent, collusion, laches, waiver or estoppel." *Jackson*, supra, *id.* (quoting *Sadat v. Mertes*, 615 F.2d 1176, 1188 (7th Cir.1980).) For these reasons, plaintiff Veal's protestations, while understandable, are legally without merit.

### Retaliatory Discharge in Violation of the First Amendment

█ One of Veal's claims is that he was discharged in retaliation for exercising his First Amendment right to freedom of association in violation of the Illinois and United States Constitutions. The claimed association, however, clearly is that of associating (or "joining") with other members of the U.M.W. (Union), and that activity is expressly protected by § 7 of the Act which provides in relevant part that, "Employees shall have the right to self-organization, to form, *join*, or assist labor organizations...." 29 U.S.C. § 157. [Emphasis added.] Ordinarily, because the activity is expressly protected, *Garmon* would mandate preemption. However, because the activity is admittedly an "elevated" right under both the Illinois and United States Constitutions and over which this Court would have subject matter jurisdiction under both 28 U.S.C. § 1331 and § 1332(a), the Court feels the issue warrants further discussion.

While it cannot be seriously argued that the interest of the State of Illinois in protecting its workers from wrongful discharge for exercising their state constitutional right to association deserves little weight, it is manifest that this Court's judicial recognition of that interest poses a serious threat of interference with the federal regulatory scheme embodied by Congress' creation of the NLRB, as does its recognition of the First Amendment claim. Mr. Justice Frankfurter observed in *Garmon*, that "when the exercise of state power over a particular area of activity threaten[s] interference with the clearly indicated policy of industrial relations, it has been judicially necessary to preclude the States from acting." *Garmon*, 359 U.S. at 243, 79 S.Ct. at 778.

In the instant case, the association allegedly infringed upon was that of union membership; a right of association expressly protected by the Act. Furthermore, § 8 of the Act, 29 U.S.C. § 158(a)(3) arguably prohibits discharge because of union membership. In any event, it is clear that this particular type of association falls within the parameters of the Act. Thus, to recognize a separate state or federal consti-

---

4. This conclusion, albeit reached in a Railway Labor Act case, seems premised on the concept that such activity comes within the jurisdictional ambit of the National Labor Relations Board (NLRB).

tutional claim could realistically lead to inconsistent results which might impermissibly interfere with the statutory scheme for dealing with these claims under the Act. Apparently recognizing this type potential jurisdictional quandry, the Supreme Court in *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) observed that "it might be reasonable to infer that Congress preferred the costs inherent in a jurisdictional hiatus to the frustration of national labor policy which might accompany the exercise of state jurisdiction." *Id.*, at 436 U.S. 203, 98 S.Ct. 1761.

While the Court is mindful of the gravity of a First Amendment claim and the sanctity of the right to have such a claim adjudicated by an Article III court, it is nonetheless reluctant to recognize it in this instance. Where the association claimed is that of union membership, the Court feels that the exercise of state or federal jurisdiction is inappropriate except as allowed by the Act. Granted, this conclusion does present a jurisdictional hiatus, but it also precludes a very real threat of frustration of national labor relations policy. For these reasons, the Court finds the First Amendment claims preempted by the NLRA.[5]

### Retaliatory Discharge for Joining the Union

▮ Veal also claims damages for being discharged for joining the UMW, apparently in violation of the public policy of the State of Illinois. As discussed above, joining a union is clearly protected by § 7 of the Act and firing an employee for doing so is expressly defined as an unfair labor practice by § 8, 29 U.S.C. § 158(a)(3). Additionally, this claim presents no constitutional matters which would otherwise give the Court subject matter jurisdiction over the claim. Accordingly, under *Garmon*,

the Court finds this claim preempted as well.

### Retaliatory Discharge for Exercising Plaintiff's Rights Under the Illinois Workmen's Compensation Act.

▮ Plaintiff Veal additionally asserts a state law statutory claim for retaliatory discharge in violation of section 4 h of the Illinois Workmen's Compensation Act, SHA ch. 48, ¶ 138.4. In deciding whether this claim is preempted, "the threshold determination to be made is whether the conduct the State seeks to regulate is actually or arguably protected or prohibited by the NLRA." *Local 926, Intern. Union of Oper. Eng. v. Jones*, 460 U.S. 669, 676, 103 S.Ct. 1453, 1458, 75 L.Ed.2d 368 (1983) (*Jones*). Discharging an employee for filing a workmen's compensation claim is neither actually nor arguably protected or prohibited by the Act. That being the case, the Court must next decide whether cognizance of the claim risks impermissible interference with the federal regulatory scheme.

In *Sears*, the Supreme Court articulated the focus of the Court's analysis in holding:

The critical inquiry ... is not whether the State is enforcing a law related specifically to labor relations or one of general application, but whether the state law based claim presents a controversy that is identical to (as in *Garmon*) or different from (as in *Farmer*) the claim that could have been, but was not, presented to the labor board. For it is only in the former situation that a ... court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid.

*Sears*, supra, 436 U.S. at 197–98, 98 S.Ct. at 1757–58.

The controversy presented by Veal's statutory retaliatory discharge claim is definitely not identical to the claim he did bring

---

**5.** This is not to say that other types of association based, for example, upon religion, race, outside activities, and the like would be preempted. It is only because this association (union membership) is labor-related that the Court so holds.

before the Board.[6] More significantly, Veal could not have pursued this claim before the Board because there is nothing in the Act conferring jurisdiction of a non-labor related, state statutory claim on them. Such jurisdiction is, however, conferred on this Court by 28 U.S.C. § 1332.

In this instance, Illinois undoubtedly has a substantial and significant interest in protecting its citizens from being summarily discharged for exercising their rights under its workmen's compensation regulations. Similarly, there is in the Court's mind little doubt that this interest, at best, only marginally touches the area of labor-management relations. As the Supreme Court wrote in *Jones:*

> [Where] ... the conduct at issue is only a peripheral concern of the Act or touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the State of the power to act, we refuse to invalidate [preempt] state regulation or sanction of the conduct.

*Jones,* supra, 460 U.S. at 677, 103 S.Ct. at 1459.

The conduct at issue here is firing an employee for filing a compensation claim, which clearly is only arguably a peripheral concern of the Act. Likewise, this conduct manifestly touches on interests deeply rooted in local responsibility—the interest in insuring unimpeded access to the State's system of compensating its citizens for work-related injuries. Because there is no indication in the Act whatsoever that Congress intended to preempt the State's regulation of such conduct, the Court finds in light of *Jones* that Veal's claim for retaliatory discharge resulting from his filing a workmen's compensation claim is not preempted by the NLRA.

### Intentional Infliction of Emotional Distress

■ The question of whether a state law claim for intentional infliction of emotional distress is preempted by sections 7 and 8 of the NLRA has already been decided by the Supreme Court in *Farmer. Keehr v. Consolidated Freightways of Delaware, Inc.,* 825 F.2d 133, 136 (7th Cir.1987).

*Farmer* held that:

> To preclude preemption, a claim for intentional infliction of emotional distress must be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself.

430 U.S. at 305, 97 S.Ct. at 1066 (footnote omitted).

Furthermore, the "claim must be based on 'outrageous' conduct and not simply 'on the type of robust language and clash of strong personalities that may be commonplace in various labor contexts'." *Keehr,* supra, 825 F.2d at 136 (citing *Farmer,* 430 U.S. at 306, 97 S.Ct. at 1066).

In the case at bar, Veal has alleged and put on evidence that he was vigorously and maliciously harassed both for joining the union and for filing his workmen's compensation claim by Kerr-McGee. This harassment allegedly even included Kerr-McGee officials coming to his hospital room and making repeated phone calls to his treating physician. Because at least some of the alleged harassment centered around his joining the union, Kerr-McGee vigorously argues that any alleged harassment arguably falls within the prohibitions of § 8 of the Act. The Supreme Court, in *Sears,* observed that "the acceptability of 'arguable protection' as a justification for preemption in a given class of cases is, at least in part, a function of the strength of the argument that § 7 does in fact protect the disputed conduct." *Sears,* 436 U.S. at 203, 98 S.Ct. at 1761. The Court finds this reasoning equally applicable to an arguable prohibition argument based on § 8.

A thorough reading of § 8, 29 U.S.C. § 158, does not convince the Court that the

---

**6.** It appears that Veal, through the Union, did file a retaliatory discharge complaint with the NLRB which refused to issue a complaint.

type of harassment alleged by Veal is, in fact, prohibited by that section. Furthermore, applying *Farmer*, the Court finds that while it cannot be said that the claim is unrelated to employment discrimination, the claim, as alleged, is certainly a function of the particularly abusive manner in which the discrimination was accomplished. Namely, the allegedly incessant harassment over the compensation claim and Veal's union membership. Thus, to the Court, it appears Veal's claim is not that his emotional distress was precipitated by his discharge, but rather by the prefatory alleged harassment. For this reason, the Court finds the claim to be a function of the manner in which the discrimination was accomplished (the harassment) rather than a function of the actual discrimination itself (the discharge). Finally, as the Seventh Circuit noted in *Jackson v. Consolidated Rail Corp.*, supra, discussing *Farmer*:

> ... potential interference with the jurisdiction of the NLRB did not overcome the State's interest because resolution of the State tort suit turned on whether the union's actions had caused the plaintiff severe emotional distress, whereas the focus of the unfair labor practice turned on whether the union's conduct discriminated against the plaintiff in terms of employment opportunities.

717 F.2d 1051–52.

Applying this same analysis to the facts of the instant case, this Court concludes that Veal's tort claim turns not on whether Kerr–McGee's alleged harassment was discriminatory against his employment opportunities, but rather on whether it proximately caused his emotional injuries. The State of Illinois obviously has a substantial interest in protecting its citizens from the type and severity of harassment alleged in this claim, and there is little likelihood that judicial recognition of that interest would interfere with the federal regulatory scheme in light of above-stated analysis. For these reasons this Court, like the Supreme Court in *Farmer*, finds that the potential for interference with the jurisdiction of the NLRB does not overcome Illinois' interest in proscribing such conduct.

Accordingly, the Court finds that Veal's claim for intentional infliction of emotional distress is not preempted by the Act.

■ The defendant has alternatively urged that this claim is also barred by the exclusivity provisions of the Illinois Workmen's Compensation Act. While it is true that injuries resulting from the intentional infliction of emotional distress are compensable under that Act, *see Collier v. Wagner Castings Co.*, 81 Ill.2d 229, 41 Ill.Dec. 776, 408 N.E.2d 198 (1980), it is not true that they are barred by the exclusivity provisions of that Act. *Martin v. Granite City Steel Div. of Nat. Steel*, 607 F.Supp. 1430, 1433 (S.D.Ill.1985); *see also Collier*, supra, *Jablonski v. Multack*, 63 Ill.App.3d 908, 20 Ill.Dec. 715, 380 N.E.2d 924 (1978). Thus, this contention is without merit.

In light of the foregoing discussion the Court rules as follows:

1. Plaintiff's First Amendment claims are preempted.
2. Plaintiff's discharge for union membership claims are preempted.
3. Plaintiff's discharge for workmen's compensation claim is not preempted.
4. Plaintiff's intentional infliction of emotional distress is not preempted.

IT IS SO ORDERED.