ZAHRA, J.

(concurring in part and dissenting in part).

Though I join the majority’s opinion in Parts I, II, 111(A), (C), and (D), and IV(B), I write separately to dissent from Parts III(B) and IV(A) and the outcome of the case. I agree with the majority’s conclusion that the *298 Labor-Management Reporting and Disclosure Act[1] does not preempt plaintiffs’ Whistleblowers’ Protection Act (WPA)[2] claims. But I respectfully dissent from the majority’s conclusion that the National Labor Relations Act (NLRA)[3] does not preempt plaintiffs’ WPA claims. I conclude that plaintiffs’ WPA claims are arguably subject to the NLRA because plaintiffs’ reporting of alleged wrongful conduct was done to assist their labor organization. I further conclude that plaintiffs’ WPA claims do not fall within any preemption exception. Finally, I conclude that plaintiffs’ WPA claims represent a classic example of unacceptable NLRA circumvention through artful pleading. I would reverse the judgment of the Court of Appeals and dismiss plaintiffs’ WPA claims because they are preempted by the NLRA.
I. APPLICABLE LAW: NLRA PREEMPTION AND ITS EXCEPTIONS
I am in agreement with the general legal propositions stated by the majority with regard to NLRA preemption and its exceptions. As noted by the majority, San Diego Bldg Trades Council v Garmon[4] is the seminal case governing the extent of NLRA preemption. Garmon provides the following preemption rule: “When an activity is arguably subject to § 7[5] or § 8[6] of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board.”[7] But I also find guidance from the United *299 States Supreme Court’s subsequent case, Local 100, United Ass’n of Journeymen & Apprentices v Borden, in which the Court stated:
[I]n the absence of an overriding state interest..., state courts must defer to the exclusive competence of the National Labor Relations Board in cases in which the activity that is the subject matter of the litigation is arguably subject to the protections of § 7 or the prohibitions of § 8 of the National Labor Relations Act.[8]
The standard for “arguably subject” is permissive. An activity that is the subject matter of the litigation at hand is “arguably subject” to the protections of § 7 or the prohibitions of § 8 if it “is not plainly contrary to [the NLRA’s] language and.. . has not been ‘authoritatively rejected’ by the courts or the Board.”[9]
The majority relies on Belknap, Inc v Hale for the proposition that conduct is “arguably prohibited” by the NLRA when “the controversy presented to the state court is identical with that which could be presented to the Board.”[10] While this is a correct statement of the law, I take issue with the majority’s interpretation of this passage as whether the “state law claim . . . could have been presented [to the NLRB].”[11] This is, in my view, an incorrect interpretation. The more precise interpretation is whether the underlying “activity that is the subject matter of the litigation is arguably subject to the protections of § 7 or the prohibitions of § 8”[12]— the same inquiry as in Garmon.
*300 After a court determines that certain activity is arguably subject to the protections of § 7 or the prohibitions of § 8 of the NLRA, the matter will only be preempted if it is also determined that no exception to NLRA preemption applies. A claim arising from an “activity” that is “arguably subject” to the NLRA may be adjudicated by a state or federal court if the
activity that otherwise would fall within the scope of Garmon . .. was a merely peripheral concern of the [NLRA] or touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act.[13]
II. APPLICATION OF THE LAW TO THE FACTS
A. “ARGUABLY SUBJECT” TO THE NLRA
Unlike the majority, I conclude that plaintiffs’ WPA claims are “arguably subject” to the NLRA. I start my analysis by reviewing the activity that is the subject matter of this litigation — plaintiffs’ claims that they were wrongfully discharged for reporting their suspicions of wrongdoing to the United States Department of Labor (USDOL). Accepting as true plaintiffs’ assertions of wrongdoing, plaintiffs were assisting their labor organization, Laborers’ Local 1191, by exposing that the organization’s assets might be subject to depletion through fraud, embezzlement, and misuse of union funds. By exposing this conduct, plaintiffs clearly hoped to bring an end to this activity, thereby preserving the integrity, effectiveness, and financial assets of their union.
*301 The provisions of the NLRA clearly give plaintiffs the right to engage in the conduct that they did. That right may be found in § 7 of the NLRA, which states that all “[e]mployees shall have the right to .. . assist labor organizations . .. .”[14] Additionally, employers are prohibited from engaging in “unfair labor practice^]” by § 8 of the NLRA, which bars “interfering] with, restraining], or coercing] employees in the exercise of the rights guaranteed in section 7[.]”[15] These two NLRA provisions apply in this case. Plaintiffs are undoubtedly employees of the labor union, entitled to the protections of § 7.[16] The labor union, in its relationship to plaintiffs as their employer, is clearly subject to the restrictions in the NLRA.[17] Plaintiffs’ discharges, if the allegations are true, would violate the NLRA.
The majority opinion erroneously asserts that when the term “assist” has been given independent legal *302 force, it has only been in the context of a nonmember’s assistance to the labor organization. But its own citation demonstrates that this is not so. The majority cites Southern Greyhound Lines and Anderson, which states: “It is well-settled that Section 7 of the Act protects an employee in his right to assist a labor organization regardless of whether he is eligible for membership in it. . . .”[18] This quotation implies that both members and nonmembers may assist a union and be protected under § 7. Furthermore, in United States Dep’t of Justice, INS, Border Patrol v Fed Labor Relations Auth, the court noted that the right to assist any labor organization “confer[s] the right to wear a union lapel pin. .. .”[19] Border Patrol did not distinguish between members who wear a pin and nonmembers who may choose to do the same, nor would it be sensible to do so.
It is of no legal consequence that plaintiffs have not specifically asserted their right to assist their labor organization under § 7 because reporting suspected criminal activity to the USDOL is per se “assistance] [to a] labor organization[].”[20]
Specifically, plaintiffs based their claims of criminal activity on 29 USC 501(a) and (c), which detail the fiduciary responsibilities of officers of labor organizations.[21] 29 USC 501(a) states that “officers ... of a labor organization occupy positions of trust in relation to *303 such organization and its members as a group” and that each officer therefore has a duty “to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.” Similarly, 29 USC 501(c) prohibits an officer of a labor organization from embezzling, stealing, or converting any “assets of a labor organization of which he is an officer ....” To point out when a union officer may not be complying with his or her fiduciary responsibilities is, without question, “assisting] a union,” irrespective of how plaintiffs characterize their complaints. The NLRA not only protects employees who assist unions in their formation, but also those employees who help unions continue to exist for the benefit of the union members.[22]
Likewise, employees who notice and report corruption of union leadership, particularly when that corruption suggests embezzlement from the union itself or gaining an unfair profit at the union’s expense, assist the union by enabling the members to be well represented in a manner consistent with the members’ best interests. In this consolidated case, the union officials, in their capacity as employers, were prohibited by the NLRA from discharging their employees simply because the employees reported their suspicions of illegal activity that would harm the union. To permit the employer to do otherwise would “interfere with . . . employees in the exercise of the rights guaranteed in section 7[.]”[23]
*304 The majority, in my view, errs by calling plaintiffs’ claims of criminal misconduct “independent assertions” because this implies that those assertions of criminal misconduct had nothing to do with unions or union assistance. It then states that “[w]hile the NLRA regulates employees’ concerted activities for their mutual aid or protection, it simply does not regulate the reporting of federal and state crimes.” The majority focuses on the wrong activity. The issue is not whether the NLRA regulates the reporting of federal and state crimes. Rather, the issue is whether reporting a federal or state crime in this instance would fall under the protections of the NLRA.[24] Because the purpose of reporting the federal and state crimes was to aid or assist the union, the activity falls under § 7 of the NLRA.[25]
Likewise, the majority’s focus on Eastex, Inc v NLRB[26] is misplaced. The Eastex case focuses on the provision in § 7 that states, “Employees shall have the right... to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. . ..” In determining the scope of “other mutual aid or protection, Eastex states that “at some point the relationship” between concerted activity and *305 the “employees’ interests as employees .. . becomes so attenuated that an activity cannot fairly be deemed to come within the ‘mutual aid or protection’ clause.”[27] Though Eastex guides us with regard to the meaning of “mutual aid and protection,” it does not aid us in determining what activities “assist” a labor union.
I also conclude that the majority has erroneously applied Handicabs, Inc and Trail[28] to the case at hand. True enough, Handicabs states that protection under § 7 “can be lost whenever employee communications to third parties do not relate to [the] labor practices of the employer . . . ,”[29] But the majority omits two important details of Handicabs that suggest that its rule does not apply in the instant case. First, Handicabs addresses the “mutual aid or protection” aspect of § 7, not its provision related to “assisting]” a labor organization.[30] Second, the portion quoted by the majority truncates language that is not superfluous, but is important to an understanding of the quotation’s context; Handicabs states that NLRA “protection can be lost whenever employee communications to third parties do not relate to labor practices of the employer, such as disparaging *306 the employer’s reputation or quality of its product, or whenever those communications are maliciously motivated. ”[31] The employee complaints described in Handicabs are a far cry from those in the case at hand, in which the employees reported that the union manager was violating his federal, statutorily created fiduciary duties to the union and its members.
B. THE PREEMPTION EXCEPTIONS
Controversies that would otherwise be preempted by the NLRA are not preempted when a plaintiffs claim reflects “deeply rooted” state interests or are matters of “peripheral concern” to the NLRA.[32] Thus, the issue is whether Michigan has a deeply rooted state interest in applying the WPA in plaintiffs’ cases or whether the claims are of peripheral concern to the NLRA.
Though these appear to be two exceptions, in application they amount to one. In practice, courts effectively presume that claims grounded in state law reflect deeply rooted state interests.[33] Thus, the critical inquiry is whether the conduct at issue is of peripheral concern to the NLRA. Generally speaking, courts make this determination by engaging in a fact-intensive inquiry to decide whether the NLRA and the state statute, as applied, prohibit the same activity. When the NLRA and state law do not prohibit the same conduct, the preemption exception will apply.
The United States Supreme Court case Farmer v United Brotherhood of Carpenters & Joiners[34] is instrumental in demonstrating how to apply the NLRA pre *307 emption exception. In Farmer, to determine whether a state-law claim for intentional infliction of emotional distress (IIED) was exempt from NLRA preemption, the Court focused on whether the NLRA’s prohibitions protected the plaintiff from the same complained-of conduct as the state-law IIED claim.[35] The Court contrasted the plaintiffs IIED claim, which protected the plaintiff from conduct that no reasonable person in civilized society should be required to endure, with the plaintiffs potential NLRA claim, which would ask whether the alleged employer conduct rose to the level of an unfair labor practice under § 8.[36] The Court noted that the two inquiries would be different because the NLRA did not punish outrageous conduct as outrageous conduct, but merely insofar as the conduct would have constituted an unfair labor practice.[37] The Court wrote: “No provision of the National Labor Relations Act protects the ‘outrageous conduct’ complained of by petitioner.... [T]here is no federal protection for conduct on the part of union officers which is so outrageous that ‘no reasonable man in civilized society should be expected to endure it.’ ”[38] Therefore, the Court determined that the NLRA preemption exception applied to the plaintiffs claim for IIED because “the *308 state-court tort action [could] be adjudicated without resolution of the ‘merits’ of the underlying labor dispute.”[39]
The United States Supreme Court clarified this rule in Sears, Roebuck & Co v San Diego Co Dist Council of Carpenters, pronouncing that the preemption exception depends upon whether the “controversy presented to the state court is identical to ... or different from . .. that which could have been, but was not, presented to the Labor Board.”[40] The Court’s rationale for this rule was that “it is only [when the controversy would be identical] that a state court’s exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board . . . .”[41]
In this case, plaintiffs’ claims sound in retaliatory discharge. As discussed previously, I conclude that the alleged retaliatory discharges are not only prohibited by the WPA but also by the NLRA. Plaintiffs reported alleged criminal conduct that triggered protection under the WPA and simultaneously assisted a labor organization, which entitles plaintiffs’ activity to NLRA protection. Thus, both the WPA and the NLRA prohibit discharge for the protected action. For this reason, ours is a much weaker case for the preemption exception than any other United States Supreme Court case granting the exception. As noted by the majority, the Court has excepted from the NLRB’s exclusive purview causes of action for IIED,[42] threats of violence,[43] tres *309 pass,[44] malicious interference with a lawful occupation,[45] and malicious libel.[46] Beyond this, the Supreme Court, lower federal courts, and other state courts have consistently held that one type of wrongful-discharge case is not preempted — wrongful discharge for claiming workers’ compensation benefits.[47] But in most other cases that involve union activity, claims for wrongful discharge are preempted.
The wrongful-discharge cases in which courts have found no NLRA exception more closely resemble the case at hand than those in which they have found an exception. Courts have extended preemption to cases alleging wrongful discharge under state constitutions, state statutes, state common law, and violations of state public policy. In some, if not all, of these cases, the state has an interest in regulating the conduct at issue.[48] However, the prevailing consideration is not whether the state has an interest in protecting a plaintiff from some employer action, but whether that interest is distinct from the actions the NLRA guards against.[49]
*310 Courts have held that wrongful-discharge claims are preempted by the NLRA despite strong state interests in regulating the conduct. Consider, for example, that at least one federal court and several state courts have held that claims of wrongful discharge in violation of public policy are preempted by the NLRA.[50] In one of these violation-of-public-policy cases, Lontz v Tharp, the factual background was similar to this case insofar as plaintiffs in both cases allege facts that demonstrate that they had tried to assist unions.[51] Additionally, one federal court has held that a claim for wrongful discharge based in the common law of contracts was preempted by the NLRA.[52] In that case, Morris v Chem-Lawn Corp, the court looked through the plaintiffs breach-of-employment-contract claim and held that it was preempted because the substance of the claim was that she had been discharged for supporting a union.[53] In another case similar to this one, a state appeals court held that the NLRA preempted a state statutory claim for wrongful discharge.[54] That case, Kilb v First Student Transp, LLC, is akin to our case both because it presents a conflict between the NLRA and a state statutory claim and because it is a case in which the plaintiff was discharged for attempting to *311 assist a union.[55] Finally, at least one federal court has held as preempted a claim for wrongful discharge in violation of the most deeply rooted state interest of all, a state constitutional right.[56] In that case, Veal v Kerr-McGee Coal Corp, the court went out of its way to explain that NLRA preemption did not depend on how strong the state’s interest was in protecting its citizens.[57] Rather, the cases governing the NLRA preemption exception base their holdings on whether the state constitution and the NLRA governed the same conduct. Because the two laws attempted to govern the same employer conduct, the claim was preempted because permitting any tribunal but the NLRB to adjudicate the claim presented a great risk that the state constitutional right would conflict with the “federal regulatory scheme.”[58]
This case bears a greater resemblance to the aforementioned no-exception cases than to the cases that find a preemption exception. In this case, plaintiffs were employees of a union who noticed that certain union officials were incorrectly reporting the union members’ activities for the purpose of paying them out of the strike fund when the members had actually been making repairs on a building. Alarmed, plaintiffs reported to the USDOL, on the union members’ behalf, that a union official might *312 have embezzled union funds or otherwise violated his statutory duty not to profit from his position as a union official.[59] This was an attempt to assist the union members; the fact that the claims were criminal in nature is immaterial. The unfair labor practice in this case is not the alleged criminal actions — embezzlement or breach of fiduciary duty. Plaintiffs never alleged a cause of action for embezzlement or breach of fiduciary duty in the circuit court; therefore, the employer’s alleged criminal conduct does not constitute the unfair labor practice. The unfair labor practice here is the wrongful discharge of these employees. In this case, the claim for wrongful discharge under the WPA essentially prohibits the same employer conduct as a claim of unfair labor practices under § 8 of the NLRA. An employer may not discharge an employee for attempting to assist a labor organization. Thus, because the conduct of the employer would be prohibited by the NLRA in the same way that it would be prohibited under Michigan law, Michigan has no deeply rooted interest in hearing plaintiffs’ WPA claims, which allege the very same unlawful conduct as an unfair-labor-practice claim under the NLRA.[60] And because the employer’s discharge of plaintiffs for protected activities is a preeminent rather than a peripheral concern of the NLRA, any claims arising from the wrongful discharge must “be left in the first instance to the National *313 Labor Relations Board.”[61]
Though the majority is correct that Michigan’s WPA statute protects important state interests that are often different than the NLRA’s main concerns, this is not the question that we must answer. This case is not about whether the WPA protects an area of law that is of peripheral concern to the NLRA; indeed, if it did not, it would be completely preempted by the NLRA. Instead, the issue is whether the controversy is of peripheral concern to the NLRA. Because a discharge for assisting a labor union would be an unfair labor practice under the NLRA, Michigan has no deeply rooted state interest in deciding that controversy for its citizens, and the NLRA will provide the relevant relief.
III. ANTICIRCUMVENTION AND NLRA PREEMPTION
Plaintiffs’ WPA claims represent a classic example of unacceptable NLRB circumvention by artful pleading. Courts adjudicating NLRA preemption are rightfully concerned about circumvention, which would undermine the NLRB’s exclusive jurisdiction over labor disputes. One example of circumvention through artful pleading that courts have struck down is the identical-elements test, under which plaintiffs incorrectly allege that, because the elements of their state-law claim and the elements of unfair labor practices under the NLRA are not identical, their state-law claim should not be preempted. Courts reject the identical-elements test because it undermines the NLRB’s exclusive jurisdiction. For example, in Hussaini v Gelita USA, Inc, the United States District Court for the Northern District of Iowa stated that there was no identical-elements test because an “NLRB proceeding and a state-law cause of *314 action will, by definition, deal with different claims and if this lack of identity were conclusive, state claims would never be preempted.”[62] Likewise, the court in Robbins v Harbour Indus, Inc eschewed formalism in holding that “[t]he characterization of the claim under state law has little, if any, bearing on the outcome of the preemption issue. Rather, cases applying the exception for conduct which is only of peripheral concern to the NLRA almost always involve an analysis of the facts underlying the state action” to determine whether the “controversy presented to the state court is identical to . . . or different from” the controversy that could have been presented to the NLRB.[63] It does not matter what terms a plaintiffs state claim is couched in when the “basis of [the plaintiffs] claim, as revealed [by discovery], is that [the] employer discharged [the employee] because of [the employee’s] support of” a union[64] — whether that be aid in its formative stages or assistance sometime down the road.
The majority’s ruling enables plaintiffs to circumvent the exclusive jurisdiction of the NLRB simply because they alleged criminal conduct to the USDOL. In doing so, the majority overlooks the fact that plaintiffs alleged that the criminal conduct violated a federal labor statute, 29 USC 501(a) and (c), which leads to the key conclusion that plaintiffs took the steps that they did to assist the members of the labor union. Labor union members are in need of this type of assistance because any right to bargain for the members’ collective good might be undermined by corrupt union leadership that embezzles union funds *315 or prioritizes its own profit over the interests of the members. Because the NLRA preempts plaintiffs’ WPA claims in full, I dissent.

 29 USC 401 et seq.

 MCL 15.361 et seq.

 29 USC 151 et seq.

 San Diego Bldg Trades Council v Garmon, 359 US 236; 79 S Ct 773; 3 L Ed 2d 775 (1959).

 29 USC 157.

 29 USC 158.

 Garmon, 359 US at 245.

 Local 100, United Ass’n of Journeymen & Apprentices v Borden, 373 US 690, 693; 83 S Ct 1423; 10 L Ed 2d 638 (1963) (emphasis added).

 Int’l Longshoreman’s Ass’n v Davis, 476 US 380, 395, 106 S Ct 1904, 90 L Ed 2d 389 (1986).

 Belknap, Inc v Hale, 463 US 491, 510; 103 S Ct 3172; 77 L Ed 2d 798 (1983).

 Emphasis altered.

 Borden, 373 US at 693 (emphasis added).

 Farmer v United Brotherhood of Carpenters & Joiners, 430 US 290, 296-297; 97 S Ct 1056; 51 L Ed 2d 338 (1977) (emphasis added) (quotation marks, citation, and original alterations omitted).

 29 USC 157. Section 7 states in full:
Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in [29 USC 158(a)(3)].

 29 USC 158(a)(1).

 See, e.g., Rider v MacAninch, 424 F Supp 2d 353, 359 (D RI, 2006) (holding that the defendants in that case, one of whom was a union business agent and one of whom was the union’s secretary/treasurer, were “employees” of the union). Indeed, this Court unanimously agrees that plaintiffs were employees of the labor union entitled to the protections of § 7.

 Office Employees Int’l Union, Local 11 v NLRB, 353 US 313, 316; 77 S Ct 799; 1 L Ed 2d 846 (1957) (holding that, when a union acts as an employer, it is deemed an employer within the meaning of the NLRA and subject to the jurisdiction of the NLRB).

 Southern Greyhound Lines and Anderson, 169 NLRB 627, 628 (1968).

 United States Dep’t of Justice, INS, Border Patrol v Fed Labor Relations Auth, 955 F2d 998, 1003 (CA 5, 1992).

 29 USC 157.

 See U.S. Department of Labor, Office of Inspector General, Investigative Report, File No 52-803C-0005-LC-J (February 8, 2010), Appellants’ Appendix, p 1099a (investigating Local 1191’s leaders for a violation of 29 USC 501(c)); Plaintiffs’ Answers to Defendants’ First Set of Interrogatories, Appellants’ Appendix, p 56a (answering a request that *303 plaintiffs “[s]pecifically identify by citation every Federal law, regulation and/or rule upon which Plaintiffs based their ‘suspicions of fraud and illegal activity’ ”).

 See, e.g., Eastex, Inc v NLRB, 437 US 556, 570; 98 S Ct 2505; 57 L Ed 2d 428 (1978).

 29 USC 158(a)(1).

 The majority states that the NLRB has no authority to enforce the penal aspects of 29 USC 501(c). This is correct, but beside the point. In this case, when plaintiffs filed their complaints in the Michigan circuit court, they did not seek enforcement of any criminal statute. All they sought was relief for their wrongful discharge. This claim — wrongful discharge — is the selfsame claim that plaintiffs could have and therefore should have brought before the NLRB.

 Certainly, the mere reporting of a suspected crime by one’s employer would not fall under the NLRA in all cases. But in this case, the employees did so for the protection of the union and its members, as indicated by plaintiffs’ interrogatories, listing violations of a federal duties-of-union-officials statute.

 Eastex, 437 US 556.

 Id. at 567-568.

 Handicabs, Inc and Trail, 318 NLRB 890 (1995).

 Id. at 896.

 The majority argues that communications to third parties do not “assist a labor organization” within the meaning of § 7 unless there is a “relationship between the communication and the employees’ interests as employees.” (Emphasis omitted.) The majority then concludes that speaking out about union leadership’s embezzling union funds does not have any connection to the employees’ interests as employees. But existing caselaw calls into question either the majority’s premise or its conclusion. For example, in American Federation of Government Employees v Fed Labor Relations Auth, 278 US App DC 358, 363; 878 F2d 460 (1989), the court stated that “an employee’s broad ‘right to ... assist’ a labor organization” “includes the right to speak out on union-management issues, without fear of reprisal[.]”

 Handicabs, 318 NLRB at 896 (emphasis added).

 Farmer, 430 US at 296-297 (quotation marks and citation omitted).

 See, generally, notes 50-58 of this opinion and accompanying text.

 Farmer, 430 US 290.

 See id. at 294 (“[T]he National Labor Relations Board would not have jurisdiction to compensate petitioner for injuries such as emotional distress, pain and suffering, and medical expenses, nor would it have authority to award punitive damages.”).

 Id. at 304 (“[T]he focus of any unfair labor practice proceeding would be on whether the statements or conduct on the part of Union officials discriminated or threatened discrimination .... Whether the statements or conduct... also caused [the complainant] severe emotional distress and physical injury would play no role in the Board’s disposition of the case, and the Board could not award [the complainant] damages for pain, suffering, or medical expenses.”).

 Id.

 Id. at 302 (citation omitted).

 Id. at 304.

 Sears, Roebuck & Co v San Diego Co Dist Council of Carpenters, 436 US 180, 197; 98 S Ct 1745; 56 L Ed 2d 209 (1978).

 Id.

 Farmer, 430 US at 302.

 Youngdahl v Rainfair, Inc, 355 US 131, 139; 78 S Ct 206; 2 L Ed 2d 151 (1957).

 Sears, 436 US at 207.

 UAW v Russell, 356 US 634, 646; 78 S Ct 932; 2 L Ed 2d 1030 (1958).

 Linn v United Plant Guard Workers, 383 US 53, 62; 86 S Ct 657; 15 L Ed 2d 582 (1966).

 See Lingle v Norge Div of Magic Chef, Inc, 486 US 399,108 S Ct 1877; 100 L Ed 2d 410 (1988); Peabody Galion v Dollar, 666 F2d 1309 (CA 10, 1982); Veal v Kerr-McGee Coal Corp, 682 F Supp 957 (SD Ill, 1988) (holding that three of four claims of wrongful discharge were preempted by the NLRA, excepting only wrongful discharge for exercising rights under workers’ compensation law); Ruiz v Miller Curtain Co, Inc, 702 SW2d 183 (Tex, 1985).

 Indeed, in some of these cases, the state’s interests may be considered deeply rooted.

 Cf. Sears, 436 US at 197 (asking whether the “controversy presented to the state court is identical to ... or different from .. . that which could have been, but was not, presented to the Labor Board”); Farmer, 430 US at 294 (deciding that “the National Labor Relations Board would not *310 have jurisdiction to compensate petitioner for injuries such as emotional distress, pain and suffering, and medical expenses, nor would it have authority to award punitive damages”).

 See Hussaini v Gelita USA, Inc, 749 F Supp 2d 909 (ND Iowa, 2010); Robbins v Harbour Indus, Inc, 150 Vt 604; 556 A2d 55 (1988); Lontz v Tharp, 220 W Va 282; 647 SE2d 718 (2007).

 See, e.g., Lontz, 647 SE2d at 722 (holding as preempted an employee’s claim that she was wrongfully discharged for refusing to have a union organizer arrested, in violation of public policy).

 See Morris v Chem-Lawn Corp, 541 F Supp 479 (ED Mich, 1982).

 Id. at 483.

 See Kilb v First Student Transp, LLC, 157 Wash App 280; 236 P3d 968 (2010).

 Id. at 283-284 (holding as preempted the plaintiffs claim that he was wrongfully discharged for refusing to discharge pro-union employees and refusing to engage in the employer’s anti-union efforts, in violation of state law).

 Veal, 682 F Supp at 957.

 Id. at 960-961.

 Id. at 960 (“While it cannot he seriously argued that the interest of the State of Illinois in protecting its workers from wrongful discharge for exercising their state constitutional right to association deserves little weight, it is manifest that this Court’s judicial recognition of that interest poses a serious threat of interference with the federal regulatory scheme embodied by Congress’ creation of the NLRB ... .”).

 See Plaintiffs’ Answers to Defendants’ First Set of Interrogatories, Appellants’ Appendix, p 56a.

 Compare Farmer, 430 US at 304, which held that the plaintiffs IIED claim was not preempted because the state court would not have to reach the “merits of the underlying labor dispute.” (Quotation marks omitted.) In this case, the WPA wrongful-discharge claim jeopardizes the NLRB’s exclusive jurisdiction over labor disputes because of the risk that the WPA would adjudicate the same, federally protected and prohibited conduct differently.

 Garmon, 359 US at 244-245.

 Hussaini, 749 F Supp 2d at 921.

 Robbins, 556 A2d at 57, quoting Sears, 436 US at 197 (quotation marks omitted).

 Morris, 541 F Supp at 482.